# Exhibit 2



**IN THE DISTRICT COURT FOR OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | | |
|---|---|---|
| THE DAYAL T. MESHRI REVOCABLE TRUST, dated April 12, 2002, by and through ARGENT TRUST OKLAHOMA, Trustee, | ) ) ) ) ) | **FILED IN DISTRICT COURT OKLAHOMA COUNTY**<br><br>MAR 2 8 2025<br><br>RICK WARREN<br>COURT CLERK<br>128 _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO. CJ-2025- |
| The Sanjay D. Meshri Revocable Trust, dated September 16, 2002, Sanjay D. Meshri, an individual, and Julie Alyson Meshri, an individual, and the Dayal Meshri Family Real Estate Trust, dated January 21, 2014, | ) ) ) ) ) ) ) ) | CJ - 2025 - 2 1 2 3 |
| Defendants. | ) | |

## PETITION

COMES NOW, the Plaintiff, the Dayal T. Meshri Revocable Trust, dated April 12, 2002, as amended and restated, by and through its successor Trustee, Argent Trust Oklahoma, and hereby alleges and states the following:

### JURISDICTION AND VENUE

1. Plaintiff Dayal T. Meshri Revocable Trust, dated April 12, 2002, as amended and restated most recently on May 18, 2023 (the "Meshri Trust"), is a trust formed under the laws of the State of Oklahoma.

2. Argent Trust Oklahoma is the acting successor Trustee of the Meshri Trust, whose principal place of business in the State of Oklahoma is in Oklahoma County, State of Oklahoma.

3. Defendant, the Sanjay D. Meshri Revocable Trust, dated September 16, 2002 (the "Sanjay Trust"), is verily believed to be an Oklahoma trust, whose Trustee is Sanjay D. Meshri.

1

4. Defendant Sanjay D. Meshri is an individual residing in the State of Oklahoma, Tulsa County and beneficiary of the Dayal Meshri Family Real Estate Trust, dated January 21, 2014.

5. Defendant Julie Alyson Meshri is an individual residing in the State of Oklahoma, Tulsa County.

6. The Dayal Meshri Family Real Estate Trust, dated January 21, 2014 (the "DMF Real Estate Trust") is an Oklahoma revocable trust with Sanjay D. Meshri as "Grantor", and no acting trustee.

7. This matter seeks the determination of the existence or nonexistence of facts affecting the administration of the Meshri Trust, and therefor, venue is mandated in Oklahoma County, State of Oklahoma, pursuant to 60 O.S. § 175.23 as that is the county where Argent Trust Oklahoma, the Trustee of the Meshri Trust resides.

8. Accordingly, jurisdiction and venue are appropriate in this court for this matter.

**Dayal Meshri**

9. Dayal Meshri is a brilliant scientist and philanthropist residing in Tulsa, Oklahoma.

10. Dr. Meshri was an extremely successful businessman, founding and leading Advance Research Chemicals, Inc. ("ARC"), until its sale on or about 2021.

11. Dr. Meshri has two children, Sanjay Meshri and Gita Meshri

12. Sanjay Meshri worked with his father at ARC until its sale in 2021, and as a result of the sale of his father's company has become extremely wealthy.

13. Sadly, it appears greed knows no bounds, as Sanjay has taken on a course of action to defraud and steal from his own father, Dr. Meshri.

**Meshri Trust**

14. Dayal Meshri, as grantor, originally formed the Meshri Trust in 2002, but most recently amended and restated the Meshri Trust on May 18, 2023.

15. In January of 2025, Dayal Meshri suffered a medical event and became incapacitated.

16. Pursuant to the terms of the Meshri Trust, Argent Trust Oklahoma was appointed and currently serves as the successor Trustee to Meshri Trust.

17. The Meshri Trust contains various assets within and outside the State of Oklahoma, including substantial holdings managed by CH Investment Partners, a wealth management firm located in Texas.

**Forged Promissory Notes and Security Agreements**

18. The successor Trustee has become aware of two purported promissory notes and security agreements, described more fully as follows:

   a. Promissory Note in the principal amount of $88,862,745 payable from the Meshri Trust to the Sanjay Trust, dated October 1, 2021, amended by that Amended and Restated Note on November 4, 2021 in the amount of $57,721.094 (the "Sanjay Note").

   b. Second Amended and Restated Promissory Note in the principal amount of $41,721,094 payable from the Meshri Trust to Julie Alyson Meshri, dated January 7, 2022 (the "Julie Note");

   c. Pledge and Security Agreement wherein Meshri purportedly pledged 100 shares in Advanced Research Chemicals, including all proceeds and dividends, to the Sanjay Trust, as security for the Sanjay Note (the "Sanjay Security Agreement"); and

   d. Pledge and Security Agreement wherein Meshri purportedly pledged 100 shares in Advanced Research Chemicals, including all proceeds and dividends, to Julie Meshri, as security for the Julie Note (the "Julie Security Agreement").

19. Each of Meshri's purported signatures on the Sanjay Note and Julie Note (together, the "Promissory Notes") are demonstrable forgeries.

20. Each of Meshri's purported signatures on the Sanjay Security Agreement and Julie

3

Security Agreement (together, the "Security Agreements") are demonstrable forgeries.

21. Sanjay and/or Julie caused to be filed a UCC-1 financing statement in the State of Texas, seeking to encumber all assets owned by the Meshri Trust, including those investments with CH Investments based on the forged Security Agreements.

22. Upon information and belief, the Sanjay Trust, Sanjay and/or Julie have received monies, payments, or other remuneration from the Meshri Trust exceeding $16,000,000 in reliance upon the forged Promissory Notes and Security Agreements.

23. The forged Promissory Notes and Security Agreements are impeding and encumbering the administration of the Trust by the Successor Trustee.

**Residence**

24. On or about January 21, 2014, Sanjay formed and was the Grantor of the DMF Real Estate Trust.

25. However, Sanjay never funded or delivered any property or assets to the DMF Real Estate Trust.

26. Rather, Dr. Meshri's residence was purportedly deeded into the DMF Real Estate Trust by Quit Claim Deed, executed on June 27, 2017.

27. Despite containing an acknowledgment by a notary public, the signature contained on the Quit Claim Deed is also forged, and not that of Dr. Meshri.

28. There is also adjacent property to Dr. Meshri's residence, which through mesne conveyances, became a part of the DMF Real Estate Trust.

29. The Meshri Trust contains provision for the distribution of all personal and real property. The fraudulent conveyances into the DMF Real Estate Trust are inconsistent with the intentions for the distribution of the real and personal property specified in the Meshri Trust.

4

30. In 2023, Sanjay, Sanjay's long-time legal counsel David Caruso, and a former employee of ARC were purportedly the three (3) Trustees of the DMF Real Estate Trust; however, all such Trustees have resigned, leaving no known Trustee of the DMF Real Estate Trust.

**Dr. Meshri's Previous Demands**

31. Prior to his medical event, Meshri became aware of the fraudulent and forged Promissory Notes and Security Agreements and demanded that his son release or void the forged notes.

32. Further, Meshri became aware that his own home had secretively been fraudulently transferred into the DMF Real Estate Trust by his son and confronted Sanjay, who promised in writing to return the property in the DMF Real Estate Trust to Dr. Meshri.

33. It further appears in writings from Dr. Meshri to Sanjay that Sanjay has improperly or illicitly obtained additionally proceeds from the sale of ARC to which he was not entitled.

## CAUSE OF ACTION I:
### (Declaratory Judgment – Notes and Security Agreements)

34. Plaintiff incorporates the allegations contained above as if fully set out herein.

35. That the Promissory Notes and Security Agreements are demonstrable forgeries.

36. That Dayal Meshri, nor any other authorized agent of the Meshri Trust, executed the Promissory Notes and Security Agreements.

37. That the Meshri Trust is entitled to declaratory relief that the Promissory Notes and Security Agreements are void and of no effect, that the UCC-1 Financing Statements are invalid and deemed null and void, and that the Trustee of the Meshri Trust be deemed authorized to take possession and control of all assets allegedly pledged as security for the payment of the Promissory Notes, including but not limited to, those assets managed by CH Investment Partners, and the Meshri Trust is awarded all other benefits of ownership of any assets pledged as security, free and

5

clear of any claims of Sanjay, the Sanjay Trust or the Julie Trust.

## CAUSE OF ACTION II:
### (Fraud – Promissory Notes)

38. Plaintiff incorporates the allegations contained above as if fully set forth herein.

39. That Sanjay, on behalf of the Sanjay Trust, and Julie made false representations to CH Investments, including, but not limited to, their entitlement to payments from the Meshri Trust accounts with CH Investments.

40. That CH Investments reasonably relied upon the false representations to pay out to the Sanjay Trust and Julie over Sixteen Million Dollars ($16,000,000.00) from monies belonging to the Meshri Trust.

41. That Sanjay and Julie each had a duty to inform the Meshri Trust that it was utilizing forged documents to obtain payments or monies from CH Investments which rightfully belonged to the Meshri Trust.

42. That Sanjay and Julie's failure to notify the Meshri Trust of their false and fraudulent actions constitutes fraud by omission.

43. That the Meshri Trust was damaged by the payment under the forged promissory notes from its funds invested with CH Investments in an amount exceeding Sixteen Million Dollars ($16,000,000).

## CAUSE OF ACTION III:
### (Declaratory Judgment – Residence/DMF Real Estate Trust)

44. Plaintiff incorporates the allegations contained above as if fully set out herein.

45. That the Quit Claim Deed purportedly executed and notarized by Dr. Meshri is a demonstrable forgery.

46. That Dayal Meshri, nor any other authorized agent of the Meshri Trust, executed

the Quit Claim Deed.

47. That after discovery of the transfer, Sanjay agreed in writing to cause the return transfer of Dr. Meshri's residence to the Meshri Trust.

48. That the Meshri Trust is entitled to declaratory relief that the Quit Claim Deed is a forgery, is void and of no effect, and that the Trustee of the Meshri Trust be deemed authorized to take possession and control of the residence and the surrounding property.

49. That the DMF Real Estate Trust is hereby revoked and determined to be null and void, and all real property and improvements are awarded to the Meshri Trust to be governed by the provisions set forth therein.

## CAUSE OF ACTION IV:
### Conversion (DMF Real Estate Trust)

50. Plaintiff incorporates the allegations contained above as if fully set out herein.

51. Defendants Sanjay and/or the DMF Real Trust have improperly obtained record title to the residence of Dr. Meshri.

52. Dr. Meshri, as reflected in the terms of the Meshri Trust, unequivocally intended to provide for the ownership of his residence in the Meshri Trust and set forth in the distributive provisions therein.

53. That Defendant Sanjay and/or the DMF Real Estate Trust's actions as it relates to Dr. Meshri's residence is wrongful and includes the unauthorized dominion over residence.

54. Defendants Sanjay and/or the DMF Real Estate Trust's actions, control, and use of forged signatures on the deed are intentional, malicious and willful and have caused and continue to cause direct and proximate injury to the Meshri Trust (and its current beneficiary, Dr. Meshri) and resulting damages.

## CAUSE OF ACTION V:

### Tortious Interference with Business Relationship

55. Plaintiff incorporates the allegations contained above as if fully set out herein.

56. The Meshri Trust has contractual and business relationships with CH Investments which included, without limitation, its right to all distributions from such investments, to sell or monetize such investments, and obtain all proceeds from such sale or distributions.

57. That Sanjay, Sanjay's Trust and/or Julie caused the fraudulent and forged security agreement to be delivered to CH Investments and filed with the Texas Secretary of State.

58. That certain monies were paid to the Sanjay Trust and Julie from the distributions or proceeds of the Meshri Trust's investments with CH Investments, which is believed to be in excess of Sixteen Million Dollars ($16,000,000).

59. That Sanjay, Sanjay's Trust and Julie's actions interfere with the Meshri Trust's right to receive distributions from CH Investments as well as other economic rights.

60. Defendants Sanjay, Sanjay's Trust and Julie knew of the Meshri Trust's contractual, business relationships and economic interests with CH Investments.

61. Defendants Sanjay, Sanjay's Trust and Julie wrongfully, intentionally, maliciously, and willfully interfered with Plaintiff's business and contractual relationships with CH Investments.

62. Defendants Sanjay, Sanjay's Trust and Julie's acts have caused and continue to cause direct and proximate injury to Plaintiff and resulting damages.

### CAUSE OF ACTION VI:
### Unjust Enrichment (against All Defendants)

63. Plaintiff incorporates the allegations contained above as if fully set out herein.

64. At the expense of the Meshri Trust and its primary beneficiary, Dr. Meshri, Defendants, including, but not limited to, Sanjay, the Sanjay Trust, Julie and the DMF Real Estate

8

Trust, have been unjustly enriched by actions set forth above, including, the forging of various documents to transfer or encumber monies or property belonging to the Meshri Trust, and receiving or utilizing funds and other assets of Meshri Trust for their own benefit.

65. Defendants have been and will continue to be unjustly enriched by their wrongful conduct and breach of duties to the detriment of the Meshri Trust and its primary beneficiary, Dr. Meshri.

66. As a direct and proximate result of Defendants' actions, the Meshri Trust and its primary beneficiary, Dr. Meshri, have suffered direct and proximate injury and resulting damages.

## CAUSE OF ACTION VII:
### Accounting and Constructive Trust

67. Plaintiff incorporates the allegations contained above as if fully set out herein.

68. The exact amount owed by Defendants is currently unknown to Meshri Trust.

69. One or more of the Defendants are in possession of and have a duty to maintain books of account showing all transactions relating to ownership and sale of ARC and all use of such proceeds, including, but not limited to, any purported gifts, sales, or other transfers of shares of ARC shares to the Defendants, and any proceeds of such gift, sale or other transfer which were invested with CH Investments.

70. Further, one or more of the Defendants are in possession of records or other information which shows all funds paid upon the false and fraudulent Promissory Notes.

71. The information necessary to determine the amounts owed to Plaintiff is readily available to Defendants yet the Defendants have failed to produce any documents or an accounting of monies received by them.

72. Due to these and other actions on the part of Defendants, Plaintiff is entitled to an equitable decree from this Court compelling Defendants to provide an accurate and complete

accounting for all transactions related to the sale of ARC, all purported gifts, sales or other transfers of ARC shares to the Defendants, the receipt of any proceeds from the sale of ARC stock by the Plaintiff or Defendants, the investments in CH Investments, and receipt of any funds as a result of Defendant's wrongdoing.

73. Based upon the wrongdoing described herein, Plaintiff requests such relief as is necessary to trace, impose a constructive trust upon and recover Meshri Trust funds that have been improperly converted, embezzled and misused by Defendants Sanjay, the Sanjay Trust and/or Julie.

### CAUSE OF ACTION VIII:
**Mandatory Injunction (against Sanjay, Sanjay Trust and Julie)**

74. Plaintiff incorporates the allegations contained above as if fully set out herein.

75. Due to forged signatures, the Defendants are without right or authority to take the following actions: (i) receive any further payments under the Promissory Notes or take any action to collect upon the fraudulent Promissory Notes; (ii) take any action which would attempt to enforce the Security Agreements; (iii) obtain any further distributions or payments from CH Investments as it relates to the Meshri Trust's investments with CH Investments; (iv) transfer, utilize, or come upon the residence or any other property allegedly held in the name of the DMF Real Estate Trust.

76. The Meshri Trust is entitled to a mandatory injunction barring the Defendants from taking any of the foregoing or actions relating thereto.

### Punitive and Exemplary Damages

77. Defendant Sanjay, the Sanjay Trust and Julie's conduct were intentional, malicious, and/or willful, and in total disregard of the Meshri Trust (and its beneficiary, Dr. Meshri's) rights, and has resulted in the Meshri Trust's injuries, losses and damages. Such misconduct supports an

award of exemplary damages against such Defendants for sake of example and by way of punishing Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment based on the following forms of relief which are pled cumulatively and alternatively:

(I)  Actual damages against each of the Defendants in an amount in excess of $75,000, exclusive of costs and interest; pre and post-judgment interest as allowed by law; and reasonable costs and attorney's fees;

(II)  Exemplary and punitive damages for the sake of example and by way of punishing Defendants Sanjay, the Sanjay Trust and Julie;

(III)  Declare the Promissory Notes and Security Agreements are null and void and of no effect;

(IV)  Declaring the deed transferring the real property and improvements to the DMF Real Estate Trust void, and that such real property and improvements should be transferred in and to the Meshri Trust by order of this Court;

(IV)  Mandatory injunction directing Defendants to refrain from any taking or other action to collect upon the Promissory Notes or enforce the Security Interests, obtain any further payments from CH Investments in which the Meshri Trust or Dr. Meshri has any interest therein, and refrain from any action to transfer, utilize or come upon the real property and improvements currently titled in the name of the DMF Real Estate Trust;

(VII)  Imposition of a constructive trust and/or equitable lien on the monies, savings, profits, property and benefits received by Defendants or otherwise controlled by Defendants through their control of the proceeds of the ARC sale, or paid upon the Promissory Notes; and

11

authorization of such relief as is necessary to trace, impose, and implement a constructive trust and recover funds, assets, and benefits which were utilized, wasted, improperly distributed, and misused by the Defendants for their personal benefit;

(VIII) Order an equitable, impartial and disinterested accounting of the funds received by Defendants from the Meshri Trust, or that are payable or rightfully belong to the Meshri Trust, including, but not limited to, those sums received as a result of the ARC sale or paid upon the Promissory Notes; and

(IX) Such other relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED,

*/s/ W-A Z*

KYLE W. GOODWIN, OBA # 17036
WILLIAM M. LEWIS, OBA # 19862
GOODWIN / LEWIS
420 NW 6TH Street, Second Floor
Oklahoma City, OK 73102
(405) 900-5700
kyle.goodwin@goodwinlewis.com
will.lewis@goodwinlewis.com